Ouachita Rural Electric Cooperative Corporation
*v.* Garrett.

4-9917                                    252 S. W. 2d 545

Opinion delivered November 17, 1952.

*Gaughan, McClellan & Gaughan,* for appellant.

*Wm. C. Medley,* for appellee.

George Rose Smith, J. This is a suit brought by the appellee to restrain the appellant from imposing a minimum charge of more than $2.50 a month for electric current used by the appellee in the operation of a welding machine. By cross-complaint the appellant asserted that its minimum rate in this situation is $10.00 a month and asked judgment for the difference between that rate and the amount collected. A temporary injunction against the higher charge was granted when the suit was filed in 1942, and this injunction was made permanent when the case was brought to trial in 1952.

The facts are not in dispute. The electric distribution system at Hampton, Arkansas, was formerly owned by the West Memphis Power & Water Company. When

the appellee installed his welding machine in 1939 or early 1940 the Company agreed to a tentative minimum monthly rate of $10.00, with the understanding that it would be reduced if the amount of current used did not justify such a high rate. The first month's experience showed that the machine used only twenty kilowatt-hours of energy, and the Company reduced the rate to a $2.50 minimum.

As of December 31, 1941, the appellant purchased this distribution system and two months later obtained a franchise from the city council. The ordinance granting the franchise contains this provision: "The Cooperative shall maintain a reasonable schedule of rates, said rates not to exceed the rates in effect at the present time without the consent of the Municipality, but may be lowered at any time practicable." At that time the West Memphis Power & Water Company had on file with the Public Service Commission a rate schedule showing that the minimum monthly charge for a machine such as the appellee's was $10.00.

After the appellant took over the system it continued to bill the appellee at the $2.50 figure until December 1, 1942, when it contended that the $10.00 minimum applied and threatened to discontinue service unless the higher rate were paid. This suit was then filed by Garrett.

For recovery the appellant relies upon the rule that, since a public utility is not permitted to discriminate among its patrons, it cannot validly agree to give a preferential rate to a particular consumer. We have often applied the rule in cases arising under the Interstate Commerce Act, as in *Mo. Pac. R. Co.* v. *Pfeiffer Stone Co.*, 166 Ark. 226, 266 S. W. 82. Before applying the rule to this appellant we should first have to determine whether such a cooperative is a public utility and if so whether it is forbidden by statute or by the common law to discriminate among its customers.

We find it unnecessary to explore these questions, for we think that by its franchise the appellant agreed to the $2.50 rate being paid by Garrett in 1942, and actual

discrimination is not shown. The franchise limited the appellant to a reasonable schedule of rates, "not to exceed the rates *in effect*" when the ordinance was passed. It cannot be denied that the $2.50 minimum rate, voidable though it may have been, was then in effect and had been for more than a year, as the appellant must have known had it examined its vendor's records. Indeed, the appellant itself continued the lower rate for nine months after its purchase. Although the appellant's manager testified that the cooperative meant to agree to the schedule then on file with the Public Service Commission, his opinion cannot alter the terms of the ordinance.

We see nothing to prevent the cooperative's agreement that the lower rate should govern. Except for the requirement that it obtain a certificate of convenience and necessity an electric cooperative is not subject to the jurisdiction of the Public Service Commission. Ark. Stats. 1947, §§ 77-1131 and 77-1136; *Department of Public Utilities* v. *McConnell,* 198 Ark. 502, 130 S. W. 2d 9. Hence the appellant was not compelled by law to adhere to the rates then on file. Nor does the record show its agreement to have been discriminatory in fact, since there is no testimony to the effect that any other consumer actually pays a greater amount for the same service.

Affirmed.